David H. Leigh, Esq. (Utah Bar No. 9433)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, 14th Floor
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
E-mail:  dleigh@rqn.com

Attorneys for PRIMARY SOURCE LENDING, LLC

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| In re: | Bankruptcy No. 24-23334 |
| **KATHI M. BEVANS** | Chapter 13 |
| Debtor. | Honorable Joel T. Marker |

**MOTION FOR ENTRY OF ORDER TERMINATING THE AUTOMATIC STAY AND REQUEST FOR WAIVING OF FOURTEEN-DAY STAY PERIOD**

Pursuant to 11 U.S.C. § 362(d)(1), Federal Rule of Bankruptcy Procedure 4001(a), and Local Rule 4001-1, Primary Source Lending, LLC, as servicer and agent for The Homestead Seven, Ltd. and Alma Hansen, Trustee of the Primary Source Lending, LLC, 401(k) Profit Sharing Plan (collectively, "PSL"), a secured creditor of Kathi M. Bevans, the named debtor (the "Debtor") in the above-captioned chapter 13 bankruptcy case (the "Bankruptcy Case"), and with a first-priority security interest in and lien on certain real property owned by the Debtor more fully described below (the "Real Property"), through counsel, hereby respectfully moves this Court for entry of an Order (i) terminating the automatic stay imposed by 11 U.S.C. § 362(a) as it relates to PSL and the Real Property so that PSL may continue with its non-judicial foreclosure of the Real Property and foreclosure upon, sell, or otherwise liquidate its interest in the Real

Property pursuant to applicable non-bankruptcy law; and (ii) waiving the fourteen (14) day stay period set forth in Fed. R. Bank. P. 4001(a)(3).  In support of this Motion, PSL states as follows:

### ADDRESS DESCRIPTION OF REAL PROPERTY

<u>Address</u>: 1812 West Crooked Sky Drive, Bluffdale, Utah 84065

<u>Owner of Record</u>:  Kathi M. Bevans

<u>Tax ID Number</u>:  33-15-327-006

### LEGAL DESCRIPTION OF REAL PROPERTY

LOT 102, PARRY FARMS PHASE 1 SUBDIVISION, ACCORDING TO THE OFFICIAL PLAT THEREOF AS RECORDED IN THE OFFICE OF THE SALT LAKE COUNTY RECORDER, STATE OF UTAH

### JURISDICTION AND FACTUAL BACKGROUND

1.      This Court has jurisdiction to hear and decide this Motion pursuant to 28 U.S.C. §§ 1334 & 157(a), together with the general order of reference of the United States District Court for the District of Utah.

2.      This is a core proceeding pursuant to 28 U.S.C. § 157(b) and is a contested matter pursuant to Rule 9014 of the Federal Rules of Bankruptcy Procedure.

3.      On or about October 12, 2021, the Debtor executed that certain *Trust Deed Note* (the "<u>Note</u>") pursuant to which the Debtor acknowledged that she had received from PSL, and in turn agreed to repay to PSL, a certain loan (the "<u>PSL Loan</u>") in the original principal sum of <u>$350,500.00</u>, together with after accruing interest, fees, costs, and other charges, including attorney fees and costs incurred by PSL in connection with collection of the PSL Loan, all according to the terms and conditions more fully set forth in the Note.  A true and correct copy of the Note is attached hereto as **Exhibit "A"** and incorporated herein by this reference.

4.      As a condition of the PSL Loan and to secure the Debtor's repayment and other obligations to PSL under the Note, the Debtor executed and delivered to PSL that certain *Deed of*

*Trust Revolving Line of Credit (with Assignment of Rents),* dated October 12, 2021 (the "Trust Deed"), which was recorded on October 13, 2021, as Entry 13797794, in Book No. 11253, pages 4665-4669, in the official records of the Salt County Recorder, and in which the Debtor irrevocably granted and conveyed in trust and for the benefit of PSL as beneficiary all of the Debtor's right, title, and interest in and to the Real Property, including the power of sale.  A true and correct copy of the Trust Deed is attached hereto as **Exhibit "B"** and incorporated herein by this reference.

5.      As of July 8, 2024 (the "Petition Date"), the Debtor was in default of her payment obligations to PSL under the Note and relating to the PSL Loan and had been in default for some time.

6.      Under the terms and conditions of the Note, the PSL Loan matured and was due and payable in full on or before November 1, 2023 (the "Maturity Date").

7.      The Debtor, however, ultimately failed to pay the PSL Loan in full by the Maturity Date.

8.      As of the Petition Date, the total balance past due and owing by the Debtor under the Note, and the only payment remaining due under the Note and on the PSL Loan, not including any attorney fees or costs incurred by PSL as a result of the Debtor's defaults or in connection with the Bankruptcy Case, was $541,226.17 (the "Petition Date Claim Balance"), which amount was comprised as the following:

| | |
|---|---|
| Principal | $350,500.00 |
| Unpaid Accrued Interest | $144,112.01 |
| Late Fees | $4,439.54 |
| Unpaid Service Fees | $345.00 |
| Balloon Penalty | $41,613.62 |
| Lender Paid Insurance | $216.00 |
| **Total Balance** | **$541,226.17** |

9.      Interest has and continues to accrue on the foregoing Petition Date Claim Balance until PSL is paid in full.  In addition, PSL has incurred, and continues to incur, attorney fees and

costs relating to the Debtor's defaults and the Bankruptcy Case, which fees and costs are also recoverable by PSL under the terms and conditions of the Note and the Trust Deed.

10.   Despite the Debtor's defaults under the Note and Trust Deed, PSL delayed recording a notice of default under the Trust Deed for approximately ten (10) months to provide the Debtor with additional time to cure those defaults by paying the PSL Loan in full, which the Debtor failed to do.

11.   As a result, PSL ultimately recorded its notice of default and thereafter scheduled a non-judicial foreclosure sale of the Real Property for June 12, 2024.

12.   On or about June 9, 2024, and days before the scheduled foreclosure sale, the Debtor contacted PSL representing that she had an "investment" that was "on the "cusp" and "coming in," and requested that PSL continue the foreclosure sale for an additional thirty (30) days.

13.   PSL ultimately granted the Debtor's request, and the foreclosure sale was continued to July 11, 2024.

14.   On July 8, 2024, the Debtor commenced the Bankruptcy Case, but did not inform PSL of her bankruptcy filing.  As a result, PSL conducted the foreclosure sale on July 11, 2024. After learning of the bankruptcy filing, PSL acknowledged and agreed that the foreclosure sale was void by virtue of the imposition of the automatics stay imposed by 11 U.S.C. § 362(a) upon the commencement of the Bankruptcy Case.

15.   The Debtor lists the Real Property on her Schedule "A" on file with the Court in the Bankruptcy Case [See, Dkt. No. 14, *Schedule A*].

16.   According to the Debtor's Schedule "A," the fair market value of the Real Property as of the Petition Date was $966,000.00. [Id.]

17.   On the Debtor's Schedule "C" on file with the Court, the Debtor claims an exemption in the Real Property in the amount of $50,800.00 pursuant to Utah Code Ann. § 78B-

5-503(2)(a)(ii), (2)(b)(ii).  [Id., *Schedule C*, pt. 2]  On October 31, 2024, the Chapter 13 Trustee filed his *Trustee's Objection to Exemption* [Dkt. No. 31] objecting to the Debtor's claimed objection in the Real Property.

18.     On the Debtor's Schedule "D" on file with the Court, the Debtor identifies PSL as the only creditor with a secured lien on the Real Property with an understated and incorrect purported secured claim amount of $350,000.00.  [Id., *Schedule D*, ¶ 2.1]

19.     On August 9, 2024, the Debtor filed her *Chapter 13 Plan* (the "Plan").  [Dkt. No. 16]

20.     In the Plan, the Debtor lists the current installment payment amount owed to PSL in the understated amount of $2,350.00, and a prepetition arrearage in the amount of $20,000.00, each of which is incorrect, and a proposed estimated payment by the Debtor to PSL, without interest, in the amount of $20,000.00.  [Id., § 3.1].  The Debtor further states that she "will maintain the current contractual installment payment on the secure claim[]" owed to PSL.  [Id.]

21.     PSL filed its proof of claim with the Court in the Bankruptcy Case, Claim No. 6 (the "PSL Proof of Claim").

22.     On September 16, 2024, PSL filed its *Objection to Confirmation of Chapter 13 Plan, Dated August 9, 2024* (the "PSL Plan Objection") [Dkt. No. 24]

23.     As of November 20, 2024, the total outstanding balance due and owing by the Debtor to PSL with the additional interest, fees, and costs (not including attorney fees and costs) incurred since the Petition Date was $593,657.56, which amount is comprised of the following:

| | |
|---|---|
| Principal | $350,500.00 |
| Unpaid Accrued Interest | 195,528.76 |
| Late Fees | 5,374.18 |
| Unpaid Service Fees | 425.00 |
| Balloon Penalty | 41,613.62 |
| Lender Paid Insurance | 216.00 |
| **Total Balance** | **593,657.56** |

24. As previously indicated, the Note matured long before the Petition Date, and the Debtor was and since that time has remained in default of her payment and other obligations to PSL under the Note and Trust Deed. Accordingly, while the nondefault monthly installment payment due and owing under the Note was originally $2,356.67, the amount of the monthly installment payment due and owing by the Debtor following default and as of the Petition Date was in fact $10,677.82.

25. Because the Note and the PSL Loan matured prior to the Petition Date, the amount of any cure of arrearages under the Plan is the full amount currently due and owing under the Note ($593,657.56 as of November 20, 2024, not including attorney fees and costs) and not the $20,000.00 currently listed by the Debtor under the Plan.

26. The Debtor has not made any payments to PSL under the proposed Plan since the Petition Date in violation of requirements of 11 U.S.C. § 1326.

27. In addition, PSL is informed, and on that basis reasonably believe, that the Debtor has failed to pay the property taxes due and owing on the Real Property for calendar years 2022 and 2023, along with a CERT fee charged, in the combined amount of $11,480.68. Such amounts, along with any real property taxes due and owing for calendar year 2024, are likewise due and owing as part of any cure payment under any proposed chapter 13 plan.

28. PSL is further informed, and on that basis reasonably believes, that the value of the Real Property is significantly less than the $966,000.00 listed by the Debtor on her Schedule D. Upon information and belief, PSL submits that the value of the Real Property is actually between $800,000.00 and $825,000.00.

29. On August 5, 2024, the Chapter 13 Trustee filed his *Trustee's Motion to Dismiss* [Dkt. No. 10].

30. The originally scheduled 341 Meeting of Creditors, which was scheduled for August 16, 2024, was subsequently rescheduled by the Chapter 13 Trustee based upon the

Debtor's failure to timely provide the Chapter 13 Trustee with required information and documentation.

31.     On August 28, 2024, the Chapter 13 Trustee filed his *Trustee's Objection to Confirmation and Recommendation of Dismissal Under 1307(c) if Unable to Resolve* [Dkt. No. 21]

32.     On September 11, 2024, the Salt Lake County Treasurer filed its *Objection to Confirmation of Plan Reorganization* [Dkt. No. 23]

33.     The rescheduled 341 Meeting of Creditors was held on October 25, 2024.

34.     On October 29, 2024, the Trustee again filed his *Objection to Confirmation and Recommendation of Dismissal Under 1307(c) if Unable to Resolve* [Dkt. No. 30] in which the Chapter 13 Trustee identified a number of documents and other information that the Debtor has failed to provide and noted the outstanding objections to confirmation that remained unresolved.

35.     On November 12, 2024, the Chapter 13 Trustee filed his *Trustee's Continuing Objection to Confirmation* [Dkt. No. 32] based, again, on the Debtor's continued failure to provide the requested required documents and information and failure to resolve pending objections to confirmation.

36.     Since the Petition Date, PSL has made a concerted effort to try and resolve its outstanding concerns and objections to the Plan with the Debtor.  Those efforts, however, have, for the most part, been ignored.

37.     Section 362(d)(1) of the Bankruptcy Code provides that a court shall terminate, annul, or modify the automatic stay for cause, including the lack of adequate protection.

38.     "Neither Section 362(d)(1) nor the legislative history defines cause.'"  <u>In re Touloumis</u>, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994).  Furthermore, "courts have ruled that whether there is cause to lift the automatic stay must be determined on a case-by-case basis."  <u>In re DBSI, Inc., et al.</u>, 407 B.R. 159, 168 (citing <u>In re Rexene Prods. Co.</u>, 141 B.R. 574, 576)).

39.     PSL submits that cause exists in this case for terminating the automatic stay imposed by 11 U.S.C. § 362(a) as it relates to PSL and the Real Property for several reasons.

40.     First, the Debtor's prepetition payment defaults and complete failure to make any post-petition payments to PSL as well constitute cause for the Court to terminate the automatic stay.  See, e.g., In re Kearns, 616 B.R. 458, 466 (Bankr. W.D.N.Y. 2020) (holding that failure to make prepetition and postpetition mortgage payments were contributing factors in that case for finding cause to terminate the automatic stay under § 362(d)(1)); see also, In re Alan R. Stuart, 402 B.R. 111, 122 (Bankr. E.D. Penn. 2009) (holding that "evidence of a debtor's post-petition default in mortgage payments meets a mortgagee's initial burden of establishing "cause" for relief.")

41.     Second, PSL's interest in the Real Property is not adequate protected in light of the erosion of the "equity cushion" in the Real Property from the increase in PSL's claim amount resulting from the additional interest, fees, and costs (including attorney fees and costs) that have and continue to accrue postpetition under the terms of the Note, and from the Debtor's failure to pay existing real property taxes.  See, e.g., In re Kearns, 616 B.R. at 466; see also, In re DB Capital Holdings, LLC, et al., 454 B.R. 804, 817 (Bankr. D. Colo. 2011) (holding that the diminution of a creditor's interest in property can be shown through, among other things, evidence of an increase in the amount of the secured creditor's debt through interest "or otherwise" and the nonpayment of taxes).

42.     Third, PSL submits that the Bankruptcy Case was commenced by the Debtor in bad faith as evidenced by, among other facts, the following: (i) the Bankruptcy Case was commenced just days prior to the continued foreclosure sale date and for the obvious purpose of delaying PSL's foreclosure of the Real Property; (ii) PSL is the Debtor's only secured creditor [see, Schedule D]; (iii) the Debtor's unsecured creditors are relatively few in number and the overall unsecured debt owed by the Debtor as of the Petition Date, excluding her student loans, is

relatively small (<u>$13,193.37</u>) in comparison to the amount the secured debt owed to PSL

(<u>$541,226.17</u>) as of the Petition Date [<u>compare</u>, *Schedule D* and *Schedule F*]; and (iv) the Debtor

has done little, if anything, to move the Bankruptcy Case forward since the Petition Date,

repeatedly failing to timely provide required documents and information to the Chapter 13

Trustee (or to provide the information and documentation at all) and failing to engage with

creditors in an effort to resolve pending objections to confirmation and the Plan.  <u>See e.g.</u>, <u>In re</u>

<u>Vessa</u>, No. 03-21712, 2004 WL 2640350 *4 (B.A.P. 10th Cir. Nov. 18, 2024)  (holding that

"[b]ad faith, and, thus, "cause" may exist when a debtor has acted improperly in some way

towards the movant0-creditor during the prepetition period and when a petition is filed to thwart

foreclosure efforts."); <u>see also</u>, <u>Laguna Assocs. Ltd. Partnership</u>, 30 F.3d 734, 738 (listing non-

exhaustive list for evaluating whether bankruptcy filing was improper in connection with

§ 362(d)(1)) and <u>In re Van Chase, LLC</u>, 2011 WL 6779557, No. 10-31555-SBB * 4 (Bankr. D.

Colo. December 16, 2011) (providing non-exhaustive list of contributing factors evidencing "bad

faith" and constituting "cause" for relief of stay under § 362(d)(1)).

      43.    <u>Fourth</u>, the Plan, as drafted, is wholly unfeasible.  Moreover, and based upon the

information provided by the Debtor in connections with her Statements and Schedules, the

Debtor simply cannot confirm any chapter 13 plan that proposes to properly treats PSL's secured

claim and the amount currently past due and owing to PSL under the Note.  The lack of any

prospect by the Debtor to confirm a chapter 13 plan is likewise cause for terminating the

automatic stay.  See, e.g., <u>In re Gundrum</u>, 509 B.R. 155, 162-63 (Bankr. S.D. Ohio 2014)

(holding that "[c]ause is broadly defined and a flexible concept" under § 362(d)(1) as "is not

limited to a lack of adequate protection or a finding of bad faith and can exists when a debtor

fails to propose a feasible plan." (<u>citing</u> <u>In re Watts</u>, 13-00395, 2013 WL 5979814, at *6 (Bankr.

N.D. Iowa November 12, 2013)); <u>see also</u>, <u>In re Garbinski</u>, 452 B.R. 574, 581 (Bankr. W.D. Pa.

2011); <u>In re Smith</u>, 333 B.R. 94, 102 (Bank. M.D. N.C. 2005); <u>In re Van Chase, LLC</u>, 10-31555-

SBB, 2011 WL 6779557, at * 6 (holding that "[b]ecause there is no plan in prospect, the Court concludes that 'cause' has been shown under 11 U.S.C. § 365(d)(1))."

44.     Based upon the foregoing, cause clearly exist under 11 U.S.C. § 362(d)(1) for Court to grant this Motion and enter an Order terminating the automatic stay as it relates to PSL and the Real Property.

45.     Finally, Federal Rule of Bankruptcy Procedures 4001(a)(3) provides that any order granting a creditor relief from the automatic stay "is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bank. P. 4001(a)(3).

46.     PSL submits that the Debtor's filing of the Bankruptcy Case within days of PSl's foreclosure sale; her continued failure to move this case forward and failure to responding to pending objections, including those filed by the Chapter 13 Trustee; the increasing interest, fees, and costs (including attorney fees and costs) accruing on the PSL Loan balance under the Note; and the pending real property taxes which the Debtor apparently cannot pay, all constitute cause for any Order granting this Motion and terminating the automatic stay as it relates to RCB and the Real Property to take effect immediately and for the fourteen (14) day stay period set forth in Fed. R. Civ. Pro. 4001(a)(3) to expressly not apply.

### CONCLUSION

The Debtor's purpose in filing the Bankruptcy Case was simply to delay or prevent PSL's foreclosure sale of the Real Property.  The Debtor has continued to the use the Bankruptcy Case for the purpose by failing to propose a chapter 13 plan that is based on the actual amounts due and owing to PSL on the PSL Loan under the Note and which complies with the requires of the Bankruptcy Code and by failing to address the various objections to confirmation raised by the Chapter 13 Trustee, PSL, and other parties in interest.  Based upon the foregoing, this Court should enter an Order (i) granting the Motion and terminating the automatic stay, effective immediately, so that RCB may continue with its non-judicial foreclosure process and foreclose

upon, sell, or otherwise liquidate its interest in the Real Property according to non-bankruptcy

law; and (ii) granting PSL such other and further relief as the Court deems just and appropriate.

DATED this 21ˢᵗ day of November, 2024.

RAY QUINNEY & NEBEKER P.C.

/s/ *David H. Leigh*

David H. Leigh
*Attorneys for Primary Source Lending, LLC,
as servicer and agent for The Homestead
Seven, Ltd. and Alma Hansen, Trustee of the
Primary Source Lending, LLC, 401(k) Profit
Sharing Plan*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 21st day of November, 2024, I electronically filed the

foregoing with the Clerk of the Court the CM/ECF System, which served notice and/or a copy of

the foregoing on all electronic filing users in this case.

I hereby further certify that on the same date I served a true and correct copy of the

foregoing via U.S. Mail, first class postage prepaid, upon the following:

U.S. TRUSTEE                          KATHI M. BEVANS
UNITED STATES TRUSTEE                 1812 W CROOKED SKY DRIVE
WASHINGTON FEDERAL BLDG.              BLUFFDALE, UT 84065
405 S MAIN ST STE 300
SALT LAKE CITY UT 84111


/s/      *Annette Sanchez*
Legal Assistant

12

# EXHIBIT A

# Trust Deed Note

October 12, 2021      Salt Lake City, Utah
[City]        [State]
1812 West Crooked Sky Drive
Bluffdale, UT 84065
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$350,500.00** (This amount is called "principal"), plus interest, to the order of the Lender. The Lender is **The Homestead Seven, Ltd., as to a 93.9514979% interest, and Alma Hansen, Trustee of the Primary Source Lending, LLC, 401(k) Profit Sharing Plan Effective 8/6/2020, as to a 6.0485021% interest.**

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of **8.00%.**

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payment on the first day of each month beginning on December 01, 2021.

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. Interest shall be compounded daily. If, on **November 01, 2023** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date." I will make monthly payments at 5442 S. 900 E. #142, Salt Lake City, UT 84117.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. **$2,336.67.**

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial pre-payment, there will be no changes in the due date or in the amount of my monthly payments unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded the permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial payment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **5 calendar days after the date it is due**, I will pay a late charge to the Note Holder. The amount of the charge will be **10.00%** of my overdue payment of principal and interest. **The late penalty shall apply to any balloon payment not paid when due or when the loan is in default and is called due or accelerated by the Lender.** I will pay this late charge promptly but only once on each late payment. In addition, **if this note is in default the interest rate will increase to 24.00% per annum during the time the loan is in default. If a late charge has been assessed and if this note is in default, the interest rate will increase to 24.00% per annum during the time the loan is in default.** If Lender obtains a judgment against borrower then post judgment interest shall accrue at the default rate of interest.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I do not comply with all terms and agreements in this transaction I will also be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time. If the note holder shall accept partial payments of amounts due or in default, said accepting of payments shall not be a waiver of the note holder's rights to enforce all of the terms and conditions of this note including the default provision herein.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address. The note holder shall not be required to give any notice regarding interest rate, due dates, default or otherwise, in order for the terms and conditions of this note to apply as set forth herein, unless required by applicable law.

Any notice that must be given to the Note holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce

its rights under this Note against each person individually or against all of us together.   This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**
I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor.   "Presentment" means the right to require the Note Holder to demand payment of amounts due.   "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**
This Note is a uniform instrument with limited variations in some jurisdictions.   In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument") and/or the Security Agreement or Agricultural Security Agreement, dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note.   That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:
Transfer of the Property or a beneficial Interest in Borrower.  If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Federal law as of the date of this Security Instrument.
If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument.   If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on borrower.
Modifications. This note may not be modified, altered, amended or changed without the express written agreement of the note holder and the undersigned.

**11. LINE OF CREDIT.**  This Note evidences a revolving line of credit.  Advances under this Note may be requested either orally or in writing by Borrower as provided in this paragraph.  Lender may, but need not, require that all oral requests be confirmed in writing.  All communications, instructions, and directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following party or parties are authorized provided in this paragraph to request advances under the line of credit until Lender receives from Borrower at Lender's address shown above written notice of revocation of their authority:  Any signer below individually and independent of any other signer. Upon Lender's approval of a request for an advance, the loan funds should be disbursed by a check from escrow account.  Borrower agrees to be liable for all sums either:  (a) advanced in accordance with the instructions of an authorized person or (b) credited to any of Borrower's accounts with Lender.  The unpaid principal balance showing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer printouts showing that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note or any subsequent agreements.  Lender may cancel this line of credit and refuse to advance any monies at any time and for any reason including, but not limited to:  (a) Borrowers or any guarantor ceases doing business or is insolvent; (b) any guarantor seeks, claims, or otherwise attempts to limit, modify or revoke such guarantee of this Note or any other loan with Lender; or (c) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender.  All monies advanced in connection with this loan will accrue interest under the terms of this note and a fee equal to the total points charged on the closing statement will be charged the borrower on each and every advance.  The advanced money fee will be added to the loan balance and will become a part of the principal loan balance.

**12. ADDITIONAL PROVISION.**  Any advance that Lender in its sole discretion may permit after the final payment date provided in this Note will be due demand and otherwise subject to the terms of this Note.

**13. WAIVER OF JURY TRIAL.** In the event of legal action taken by the undersigned I (we) hereby waive our right to a trial by jury.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____
Kathi M. Bevans

# EXHIBIT B

13797794
10/13/2021 2:43:00 PM $40.00
Book - 11253 Pg - 4665-4669
RASHELLE HOBBS
Recorder, Salt Lake County, UT
MERIDIAN TITLE
BY: eCASH, DEPUTY - EF 5 P.

When Recorded Mail To:

Primary Source Lending, LLC
5442 S. 900 E. #142
Salt Lake City, UT  84117

MTC #312258

---

SPACE ABOVE THIS LINE FOR RECORDING USE ONLY

---

# DEED OF TRUST
Revolving Line of Credit
(with assignment of rents)

THIS DEED OF TRUST ("Security Instrument") is made on **October 12, 2021**. The grantor(s) is/are **Kathi Bevans ("Borrower")**. The Trustee is **Bryan Cannon, Esquire ("Trustee")**. The Beneficiary is **The Homestead Seven, Ltd., as to a 93.9514979% interest, and Alma Hansen, Trustee of the Primary Source Lending, LLC, 401(k) Profit Sharing Plan Effective 8/6/2020, as to a 6.0485021% interest** which is organized and existing under the laws of the State of Utah, and whose address is **5442 S. 900 E. #142 Salt Lake City, UT 84117 ("Lender")**. Borrower owes Lender the principal sum of Written Amount **Three Hundred Fifty Thousand Five Hundred Dollars and No Cents** (U.S. $350,500.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **November 01, 2023**. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described Property located in **Salt Lake County, Utah**:

**See attached exhibit "A"**

Tax ID#: 33-15-327-006

which has the address of:
**1812 West Crooked Sky Drive
Bluffdale, UT 84065**

("Property Address")

TOGETHER WITH all the improvements now or hereafter erected on the Property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock, specifically one Culinary share of the Holliday Water Company and one Irrigation share of the Holliday Water Company, which are appurtenant to the property, and all fixtures now or hereafter a part of the Property. All replacements and additions shall also be covered by this Security instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real Property.

UNIFORM COVENANTS: Borrower and Lender covenant and agree as follows:
1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.
2. Funds for Taxes and Insurance. Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") equal to one-twelfth of: (a) yearly taxes and assessments which may attain priority over this Security Instrument; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard insurance premiums; and (d) yearly mortgage insurance premiums, if any. These items are called "escrow items." Lender may estimate the Funds due on the basis of current data and reasonable estimates of future escrow items.
The Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay the escrow items. Lender may not charge for holding and applying the Funds, analyzing the account or verifying the escrow items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing that interest shall be paid on the funds. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the funds was made. The funds are pledged as additional security for the sums secured by this Security Instrument.
If the amount of the Funds held by Lender, together with the future monthly payments of Funds payable prior to the due dates of the escrow items, shall exceed the amount required to pay the escrow items when due, the excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly payments of Funds. If the amount of the Funds held by Lender is not sufficient to pay the escrow items when due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as required by Lender.

*KB*

For informational purposes only. Pursuant to the Utah GRAMA, to the Orange Branch Properties is and now appears in the public record.

Submitted by Meridian Title Company

When Recorded Mail To:

Primary Source Lending, LLC
5442 S. 900 E. #142
Salt Lake City, UT 84117

MTC #312258

SPACE ABOVE THIS LINE FOR RECORDING USE ONLY

# DEED OF TRUST
Revolving Line of Credit
(with assignment of rents)

THIS DEED OF TRUST ("Security Instrument") is made on **October 12, 2021**. The grantor(s) is/are **Kathi Bevans** ("Borrower"). The Trustee is **Bryan Cannon, Esquire** ("Trustee"). The Beneficiary is **The Homestead Seven, Ltd., as to a 93.9514979% interest, and Alma Hansen, Trustee of the Primary Source Lending, LLC, 401(k) Profit Sharing Plan Effective 8/6/2020, as to a 6.0485021% interest** which is organized and existing under the laws of the State of Utah, and whose address is 5442 S. 900 E. #142 Salt Lake City, UT 84117 ("Lender"). Borrower owes Lender the principal sum of Written Amount **Three Hundred Fifty Thousand Five Hundred Dollars and No Cents** (U.S. $350,500.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **November 01, 2023**. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described Property located in **Salt Lake** County, Utah:

**See attached exhibit "A"**

Tax ID#: 33-15-327-006

which has the address of:
**1812 West Crooked Sky Drive
Bluffdale, UT 84065**

("Property Address")

TOGETHER WITH all the improvements now or hereafter erected on the Property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock, specifically one Culinary share of the Holliday Water Company and one Irrigation share of the Holliday Water Company, which are appurtenant to the property, and all fixtures now or hereafter a part of the Property. All replacements and additions shall also be covered by this Security instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real Property.

UNIFORM COVENANTS: Borrower and Lender covenant and agree as follows:
1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.
2. Funds for Taxes and Insurance. Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") equal to one-twelfth of: (a) yearly taxes and assessments which may attain priority over this Security Instrument; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard insurance premiums; and (d) yearly mortgage insurance premiums, if any. These items are called "escrow items." Lender may estimate the Funds due on the basis of current data and reasonable estimates of future escrow items.
The Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay the escrow items. Lender may not charge for holding and applying the Funds, analyzing the account or verifying the escrow items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing that interest shall be paid on the funds. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the funds was made. The funds are pledged as additional security for the sums secured by this Security Instrument.
If the amount of the Funds held by Lender, together with the future monthly payments of Funds payable prior to the due dates of the escrow items, shall exceed the amount required to pay the escrow items when due, the excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly payments of Funds. If the amount of the Funds held by Lender is not sufficient to pay the escrow items when due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as required by Lender.

KB

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 19 the Property is sold or acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Security Instrument.
3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to late charges due under the Note; second, to prepayment charges due under the Note; third, to amounts payable under paragraph 2; fourth, to interest due; and last, to principal due.
4. Charges; liens. Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.
Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice. Lender may, at his option, advance monies necessary to protect his position. Any monies so advanced will accrue at whatever the note is accruing at. Lender may require total amount to be paid immediately.
5. Hazard Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.
All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.
Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. The economic feasibility will be determined by Lender. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.
Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 19 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.
6. Preservation and Maintenance of Property; Leaseholds. Borrower shall not destroy, damage or substantially change the Property, allow the Property to deteriorate or commit waste. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.
7. Protection of Lender's Rights in the Property; Mortgage Insurance. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lenders rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this security Instrument, appearing in court, paying reasonable attorney's fees and entering on the Property to make repairs. Although Lender may take actions under this paragraph 7, Lender does not have to do so.
Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.
If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the insurance in effect until such time as the requirement for the insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.
8. Inspection. Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.
9. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.
In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle aclaim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

10. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

11. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

12. Loan Charges. If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

13. Legislation Affecting Lender's Rights. If enactment or expiration of applicable laws has the effect of rendering any provision of the Note or this Security Instrument unenforceable according to its terms, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument and may invoke any remedies permitted by paragraph 19. If Lender exercises this option, Lender shall take the steps specified in the second paragraph of paragraph 17.

14. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. Governing Law; Severability. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provision of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provision of this Security Instrument and the Note are declared to be severable.

16. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. Borrower's Right to Reinstate. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note had no acceleration occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's right in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to instate  shall not apply in the case of acceleration under paragraphs 13 or 17.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

19. Acceleration; remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraphs 13 and 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 19, including, but not limited to, reasonable attorneys' fees and costs of title evidence.



If the power of sale is invoked, Trustee shall execute a written notice of the occurrence of an event of default and of the election to cause the Property to be sold and shall record such notice in each county in which any part of the Property is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Trustee shall give public notice of the sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order; (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county clerk of the county in which the sale took place.

20. Assignment of rents and Lender in Possession. Upon acceleration under paragraph 19 or abandonment of the Property, Lender (in person, by agent or by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. Any rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this Security Instrument.

21. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

22. Substitute Trustee. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

23. Request for Notices. Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

24. LINE OF CREDIT. This Note evidences a revolving line of credit. Advances under this Note may be requested either orally or in writing by Borrower as provided in this paragraph. Lender may, but need not, require that all oral requests be confirmed in writing. All communications, instructions, and directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following party or parties are authorized provided in this paragraph to request advances under the line of credit until Lender receives from Borrower at Lender's address shown above written notice of revocation of their authority: Any signer below individually and independent of any other signer. Upon Lender's approval of a request for an advance, the loan funds should be disbursed by a check from escrow account. Borrower agrees to be liable for all sums either: (a) advanced accordance with the instructions of an authorized person or (b) credited to any of Borrower's accounts with Lender. The unpaid principal balance showing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer printouts showing that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note or any subsequent agreements. Lender may cancel this line of credit and refuse to advance any monies at any time and for any reason including, but not limited to: (a) Borrowers or any guarantor ceases doing business or is insolvent; (b) any guarantor seeks, claims, or otherwise attempts to limit, modify or revoke such guarantee of this Note or any other loan with Lender; or (c) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender. All monies advanced in connection with this loan will accrue interest under the terms of this note and a fee equal to the total points charged on the closing statement will be charged the borrower on each and every advance. The advanced money fee will be added to the loan balance and will become a part of the principal loan balance.

REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE UNDER SUPERIOR
MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of ANY mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, and Lender's address set forth on page one of the Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_Kathi Bevans_
Kathi Bevans

[Space Below This Line For Acknowledgement]

_____

STATE OF UTAH,    <<County>> ss: Salt Lake

On this 12 day of October , 2021, personally appeared before me, **Kathi Bevans**, the signer(s) of the above instrument, who duly acknowledged to me that they executed the same.

My Commission Expires: 5-5-2023

_____
Notary Public Residing at: SLC, UT

MICHAEL IVINS
NOTARY PUBLIC - STATE OF UTAH
COMMISSION# 706002
COMM. EXP. 05-05-2023

KB

MTC File No. 312258

# Exhibit "A"

Lot 102, Parry Farms Phase 1 Subdivision, according to the plat thereof as recorded in the office of the Salt Lake County Recorder.

Tax ID: 33-15-327-006